34 . APPELLATE COURTS OF ILLINOIS.

Goddard Tool Co. v. Crown Electrical Mfg. Co., 219 Ill. App. 34.

# Goddard Tool Company, Appellant, v. Crown Electrical Manufacturing Company, Appellee.

## Gen. No. 6,805.

1. PLEADING, § 379*—*how issues are formed.* Under section 55 of chapter 110, Rev. St. (J. & A. ¶ 8592), where plaintiff files an affidavit of claim with his declaration and defendant pleads the general issue and files an affidavit of merits, the respective parties are limited in their evidence to·the matters controverted by the affidavits.

2. PLEADING, § 54*—*anticipation of defenses.* A plaintiff cannot properly anticipate a defense which may or may not be made.

3. CONTRACTS, § 382*—*what may not ·be shown in action on express contract.* Where plaintiff, in an action on a contract, has proven an express contract that he was to receive a certain sum per hour for the hours of labor actually performed in the manufacture of the articles called for by the contract, it is improper to permit him to show that while a certain number of hours of labor was actually employed, the number customarily and usually required to do such work exceeded that number and to claim compensation for the larger number.

4. ACCOUNT STATED, § 4*—*when rendition of statements operates as account stated.* In a suit on a contract for the manufacture of articles on a basis of·the cost of the material plus 10 per cent and a certain amount per hour of labor employed thereon, where the evidence shows that from time to time during the performance of the contract plaintiff sent defendant invoices describing the goods shipped, the amount charged for material, the number of hours for which charge was made and the total amount due on the shipment, and defendant retained the, bills without questioning them until pressed for payment, the account is an account stated and defendant has the burden of overcoming it by competent proof.

5. EVIDENCE, § 14*—*what is matter of common knowledge.* It is a matter of common knowledge that two workmen equally skilled in their trade will take different lengths of time to perform the same task, even when equipped with the same tools and machinery.

6. EVIDENCE, § 14*—*what is matter of common knowledge as to employment.* It is a matter of common knowledge that working conditions in factories differed in 1918 from conditions at any other time, by reason of the fact that so many·young men and

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

skilled mechanics were drawn into military service and their places were taken by others not so vigorous or skilled.

7. MASTER AND SERVANT, § 84*—*what evidence is insufficient to show hours of work.* In an action on a contract for the manufacture of an article partly on a charge of a fixed sum per hour of labor, the opinions of witnesses not knowing the conditions in plaintiff's plant at the time of performance and having no experience in making the article under such conditions as to the time reasonably necessary to produce articles differing from those called for by the contract, in other plants, under other conditions and according to other specifications, can shed no light on the question as to how many hours were employed by plaintiff on the work.

8. APPEAL AND ERROR, § 1618*—*when error in admission of evidence cannot be complained of.* A plaintiff who has been permitted to introduce inadmissible opinion evidence in rebuttal of similar inadmissible evidence offered by defendant, is in no position to complain that defendant was permitted to introduce such evidence.

9. TRIAL, § 78*—*what is proper rebuttal evidence.* Where a defendant has been permitted to introduce inadmissible opinion evidence, plaintiff should be permitted to introduce similar evidence in rebuttal.

10. CONTRACTS, § 384*—*when evidence is insufficient.* In a suit on a contract for the manufacture of a certain article at an agreed price for material and per hour for labor required, evidence *held* insufficient to sustain a judgment for defendant.

11. CONTRACTS, § 381*—*what evidence as to cost of manufacture is improper.* In a suit to recover on a contract for the manufacture of an article under which plaintiff was to receive a certain sum per hour for labor employed in manufacturing the article, it is error to permit defendant to introduce, over plaintiff's objection, evidence as to the amount which defendant paid its employees per hour.

12. INSTRUCTIONS, § 115*—*when instruction is misleading.* It is error to give an instruction which is misleading because of its introduction of matters not in issue.

Appeal from the Circuit Court of Kane county; the Hon. C. F. IRWIN, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed June 29, 1920.

FRANK W. SHEPHERD and ERNEST C. LUTHER, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

HARRY G. HEMPSTEAD and JOHN K. NEWHALL, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee in a suit by the Goddard Tool Company, appellant, against the Crown Electrical Manufacturing Company, appellee, in assumpsit, brought in the circuit court of Kane county.

The declaration, in substance, alleged a contract entered into between plaintiff and defendant for the manufacture by appellant for appellee of thread gauges; alleged that it was agreed between plaintiff and defendant that said gauges were to be manufactured and said work done on the basis of material plus 10 per cent, plus labor at $1.50 per hour; that plaintiff manufactured said thread gauges and delivered said thread gauges and work to defendant in pursuance to said agreement; that under said agreement the material plus 10 per cent amounted to $179.03, and the item of work at the rate of $1.50 per hour amounted to $14,686.35, being 9,790.9 hours at $1.50 per hour. With this declaration appellant filed its affidavit of claim, made by Paul Goddard, the president of appellant company, which specifically set out and verified the facts set up in the declaration.

Appellee filed its plea of general issue and with it its affidavit of merits, which was made by D. C. DeLancey, treasurer and manager of appellee, and stated that about April 23, 1918, plaintiff entered into a verbal agreement with appellee whereby appellant agreed to manufacture for appellee about 160 thread gauges and deliver the same to appellee from time to time, as ordered and directed; that appellant agreed with appellee to furnish said thread gauges on the basis of actual cost of material plus 10 per cent and actual

labor reasonably necessary to manufacture said gauges at the rate of $1.50 per hour; that appellant represented that it was fully equipped with skilled labor and necessary tools and machinery to manufacture said thread gauges and agreed that it would keep accurate and correct time tickets showing in detail the amount of actual labor necessarily performed on each operation connected with the making and manufacturing of said gauges; that appellee before the final payment would be entitled to reasonable opportunity to examine, audit and verify said time tickets and that the amount of such actual time and labor on each of said operations should be reasonable, just and fair; that pursuant to such verbal contract appellant did manufacture and deliver to appellee during the year 1918 the said gauges; that on August 30, 1919, appellee paid appellant $914.54 to apply on account, and on October 10, 1918, made and delivered to appellant its note for $4,500 due in 90 days, and which was paid at maturity; that said thread gauges were all finally completed by appellant some time during the month of October, 1918; that thereafter appellant submitted its bill to appellee, which defendant refused to pay, because it claimed and now claims that the charges for labor performed by the appellant were exorbitant, unfair and unreasonable; that appellee was permitted by appellant to inspect, audit and verify the time tickets; that said audit disclosed that appellant did not keep correct and actual time of each operation performed; that appellant represented it had furnished 10,350 hours of actual labor in the making of said thread gauges and affiant says that appellant has included therein more than 3,000 hours in fact not chargeable against appellee for the reason that such alleged services did not represent actual labor performed in making said thread gauges; that the reasonable time and labor reasonably necessary to make and manufacture all of said thread gauges would not

exceed 2,200 hours of actual labor; that appellant on said time ticket charged more than 2,000 hours for which an examination of said tickets discloses no labor performed; that said item of material at cost plus 10 per cent amounts to $179.03, and the item of work at the rate of $1.50 per hour for said gauges so manufactured all delivered by the appellant to appellee amounts to, not to exceed 2,200 hours at $1.50 per hour, making $3,300; that appellee has overpaid appellant $1,935.51.

We have set forth the affidavits of claim and of merits in so much detail for the reason that by section 55 of chapter 110, Rev. Stats. of Illinois (J. & A. ¶ 8592), the respective parties are limited in their evidence to the matters controverted by the affidavits. *Reddig v. Looney,* 208 Ill. App. 413; *Miller v. Thomas,* 200 Ill. App. 125.

It will be seen from an inspection of the affidavits that the gauges in question were manufactured and delivered under an express contract between appellant and appellee and that the only controversy in regard to the terms of the contract is whether appellant was to be paid $1.50 per hour for the number of hours of actual labor performed in the manufacture of the gauges, or to be paid for the number of hours reasonably necessary to manufacture said gauges.

There is, however, no controversy in the evidence as to the terms of the contract in this respect. The contract was made between George Monks, who had charge of appellant's sales and order department, on behalf of appellant, and Daniel DeLancey, general manager of appellee, on behalf of appellee.

DeLancey testified as to the contract: "We told Mr. Monks we had these gauges to make and made the usual inquiry as to whether they were in a position to make them in a first-class workmanlike manner; they assured us they were; that they were making gauges for the government; were in first-class shape

and thoroughly equipped to make them; asked him how soon they could make and deliver the lot of gauges in order 341. He stated they would begin delivering in 4 weeks and make complete delivery in 3 months. We asked him what the conditions would be and what price they would make us. He said they could not make us any price; they would furnish the material at an advance of 10 per cent and would charge for the actual labor on each operation at $1.50 an hour. I asked him if he could give me any estimate of the number of hours necessary to construct such a lot of gauges. He replied that he could not; that they would not give any idea whatever; that they run their business on a time-clock basis; every ticket was stamped and would be subject to inspection at any time; that they had government inspectors to inspect the gauges and our interests would be properly safeguarded, and would keep an accurate account of each operation on the time cards. Said they employed the best skilled mechanics; had the highest grade of machinery and were fully equipped to make them; do not remember anything further in particular that he said; we told him we would give him the order, with the understanding that the time tickets were to be subject to our inspection.''

Monks testified to practically the same language with the following additional, which was not denied by Mr. DeLancey: ''I explained to him thoroughly that these gauges would be a special order in small quantities and would be subject to government inspection; that it was not a commercial job. Told him the only way we could take his order would be with the distinct understanding that he should O. K. the designs and would pay us at the rate of $1.50 per hour for labor and 10 per cent advance on the cost of the material. He said, 'We shall practically have to depend on you.' I said 'Yes.' ''

It will be seen from this testimony that both parties agree that the agreement was that appellant was to

be paid $1.50 per hour for the actual labor on each operation, and that there was nothing said by either party as to the basis for payment being the number of hours reasonably necessary for the manufacture of the gauges.

It is contended by appellant that the court erred in the admission of testimony of appellee's witnesses as to the reasonable and customary time required to manufacture the gauges and in refusing testimony of like character offered by appellant in rebuttal.

Appellant in its case in chief introduced evidence as to the terms of the contract, the manufacture and delivery of the gauges, the cost of the material, the number of hours of labor actually performed upon the contract and the amount remaining unpaid. This was all appellant was called upon to prove in the first instance and all that was proper for it to prove. It could not properly anticipate a defense which might or might not be made. Having proven an express contract that appellant was to receive $1.50 per hour for the number of hours of labor actually performed, it would have been highly improper for the court to have allowed appellant to prove that while the number of hours actually employed was only 9,790.9, that the number of hours usually and customarily required to do the same work was 15,000, or some other number, and to claim compensation therefor.

There can be no question from the evidence that it was the intention of the parties that payment was to be made for the number of hours actually consumed. Appellant's agent, when making the contract, refused to make an estimate or give any idea whatever as to the number of hours which would be required to make the gauges, but told DeLancey that they ran their business on a time-clock basis and that every ticket was stamped and would be subject to inspection at any time and DeLancey told him that appellee would give appellant the order, with the understanding the time

tickets were to be subject to appellee's inspection.

The evidence shows that appellant did conduct the business on a time-clock basis; that time cards were kept keeping an accurate count of the time employed on each operation; that such time cards were introduced in evidence; that they were open to inspection by appellee; that they were inspected by the witness Modine, an employee of appellee, who was sent by De-Lancey to appellant's factory for the purpose of auditing the time cards; that Modine spent 2 or 3 weeks in copying all the time cards, tabulating them; that the result of such audit and tabulation showed the total number of hours of labor actually performed as shown by the time cards to be 10,351.40

From time to time as the orders were filled and shipped, appellant sent to appellee invoices of the shipment, all substantially like the following, the items and amounts being different.

"7-18-18.

"Cash discount allowed ten days from July 31, 1918. Shipped via Wells Fargo Exp.   7-18-18.
Your order 341:
(3) Double end Go and No Go Plug Thread Gauges for 1¼" tube
(3) Adj. Master Ring Thread Gauges for the above plugs-Go end
(3) Adj. Master Ring Thread Gauges for the above plugs-No Go End.
Material plus 10% ........................     4.80
447.3 Hours Labor at 1.50 ................   670.95
                                            ————————
                                              675.75"

The evidence shows that from about the middle of July, 1918, to October 1, 1918, appellant sent to appellee nineteen of these invoices or bills, each one giving a description of the goods shipped, the amount charged for material, the number of hours for which charge was made at $1.50 per hour and the total amount due upon the shipment. These bills were retained by ap-

pellee and no complaint whatever made as to their correctness until October 10, 1918, after appellant began to strenuously insist upon payment of the bills.

In *B. S. Green Co. v. Smith*, 52 Ill. App. 158, it was said: "The appellee, who was a manufacturer of such goods, rendered his bills for goods sold to appellant from time to time, in which bills the articles sold were itemized, process stated, and total amount given without allowing the discount claimed to have been contracted for. * * * The case seems to fall within the rule of law that as between merchants an account rendered is deemed to be conclusive as to price given and amounts stated if not objected to within a reasonable time, unless some fraud, mistake, omission or inaccuracy is shown. *McCord v. Manson*, 17 Ill. App. 121; *Mackin v. O'Brien*, 33 Ill. App. 476."

In *Concord Apartment House Co. v. Alaska Refrigerator Co.*, 78 Ill. App. 682, it was said: "The jury were accurately and clearly instructed as to what in law constitutes a stated account, and its legal effect in an instruction given on behalf of the plaintiff, as follows:

"'If the jury believed from the evidence that some time about the fifth of October, 1896, a statement of account was made by the plaintiff or its agent, and submitted to the defendant or its agent, and the latter acquiesced in its correctness, the jury are instructed that the law regards this as a stated account, by which both parties will be bound unless it can be shown that some error or mistake has been made or fraud practiced, and the burden of proving mistake or fraud is on the party alleging it.'"

In *Rudolph Wurlitzer Co. v. Dickinson*, 153 Ill. App. 36, the court said: "Furthermore, a statement of the account was rendered to defendant each month and the last statement, showing a balance of $602.89 to be due, was mailed to the defendant March 1, 1908. The evidence shows that at the time of the trial, June 1, 1908,

no objection to the account rendered on March 1, 1908, had been made to the plaintiff. Under the circumstances of this case, this absence of objection for such a length of time made the account rendered an account stated and made the account and proof that the account had been so rendered admissible in evidence upon that theory. When a rendered statement of an account has been retained, without objection to the account or to the items contained therein, for such a length of time that the recipient has had a reasonable time within which to express objections, then he is in law regarded as having waived his objections, if any he had. Thereafter, if an action as upon an account stated be brought upon the claim, the original character or form of the debt, as well as what kind of evidence was necessary to establish the same, is unimportant, for the cause of action is then not upon the original contract or transaction, but upon the promise, implied by the law where there is none expressed, to pay the balance. *Dick v. Zimmerman*, 207 Ill. 636. While the recipient of an account rendered, which through lack of objection on his part has ripened into an account stated, is precluded from opening up previous disputes between the parties regarding the various items of the account, he is not precluded from showing fraud or mistake; but if he raises any such issue the burden of proof is upon him to establish it. *Standard Oil Co. v. Van Etten,* 107 U. S. 325, 330-1.''

In *Bailey v. Bensley,* 87 Ill. 556, it was said: ''During said two years, appellees rendered to appellant detailed accounts of some ninety-seven sales made by them on his account, wherein are contained these items of charges for storage and insurance. No objection was made to any of these accounts rendered until since the commencement of this suit. Such account of sales rendered and unobjected to may be regarded as prima facie evidence of the correctness of the account. *Mertens v. Nottebohms,* 4 Grat. [Va.] 163; *Shepard v.*

*Bank of Missouri,* 15 Mo. 143; *Philips v. Belden,* 2 Edw. Ch. [N. Y.] 1." In *State v. Illinois Cent. R. Co.,* 246 Ill. 188, on page 241, it was said: "A stated account is an acknowledgment of an existing condition of liability of the parties, from which the law implies a promise to pay the balance thus acknowledged to be due. The terms 'stated' and 'settled' accounts are sometimes used as equivalent expressions. (1 Cyc. 364, and cases cited; 1 Words and Phrases, p. 93; 1 Encyc. of L. & P. 728, and cases cited; *Chicago, M. & St. P. Ry. Co. v. Clark,* 92 Fed. 968; *McDow v. Brown,* 2 S. C. 95.) * * * An accounting does not change the character of the claim, but simply settles the amount of the balance due. It is not, strictly speaking, the statement of a new debt but merely the acknowledgment of an old one. (*Chace v. Trafford,* 116 Mass. 529; 1 Cyc. 450, and cases cited; 1 Encyc. of L. & P. 716, and cases cited.) An account stated is only prima facie evidence of its correctness. (*Perkins v. Hart,* 11 Wheat. [U. S.] 237; *Gruby v. Smith,* 13 Ill. App. 43; 1 Encyc. of L. & P. 723; 1 Cyc. 453.) It may be impeached for fraud or mistake. The general rule is, that in an application to open a stated account the plaintiff must either charge fraud or state particular errors. (*Bruen v. Hone,* 2 Barb. [N. Y.] 586.) * * * The general rule, however, that in order to open a stated account the bill must either charge fraud specifically or point out the particular errors, applies whether the parties have been dealing at arm's length or occupy confidential relations, and the authorities seem to be a unit in holding that mistakes or errors must be specifically alleged and proved. The following are some of the many authorities so holding. 1 Daniell's Ch. Pl. & Pr. (6th Ed.) 371; *Seamans v. Burt,* 11 R. I. 320; *Chappedelaine v. Deschenaux,* 4 Cranch. [U. S.] 306; *Kronenberger v. Binz,* 56 Mo. 121; *Brown v. Welsh's Ex'r,* 27 N. J. Eq. 429; *Leaycraft v. Dempsey,* 15 Wend. [N. Y.] 83; *Young v. Hill,* 67 N. Y. 162;

*Kinsman v. Barker,* 14 Ves. Jr. 578; *Shepherd v. Morris,* 4 Beav. 252; *Taylor v. Hayling,* 1 Cox 435; *Johnson v. Curtis,* 3 Brown's Ch. 266 (Eng.)."

By appellee's retention of the bills, the account between the parties having become an account stated by reason of the appellee having failed to question the correctness of the bills and invoices, the burden rested upon it of overcoming it by proof competent for that purpose.

It is a matter of common knowledge that two workmen equally skilled in their trade will occupy different lengths of time in the performance of the same task, even when equipped with the same tools and machinery. Some men are rapid in their movements and some slow. It is also a matter of common knowledge that working conditions in factories differed in 1918 from conditions at any other time. Millions of young men between the ages of 21 and 30, the most vigorous time of life, were withdrawn from their usual pursuits of life; that thousands of the best skilled mechanics went to war and their places in factories were taken by other men, who, while perhaps having the same degree of skill, were, by reason of age or other reasons, able to turn out less work in a given length of time. The evidence shows that in appellant's factory during the time this work was being performed men came and went frequently and they were always hiring new men.

By the contract entered into between the parties the work was to be performed in appellant's factory under the conditions which existed there and appellee was to pay for the actual number of hours spent upon the work under the conditions then and there existing in that particular factory. The order for the gauges was a special order and not a commercial job. The gauges were made from designs and specifications prepared for this particular contract. The opinions of witnesses having no knowledge of the conditions existing in appellant's plant at that particular time and having no

experience in making gauges under those conditions as to the time reasonably necessary to produce gauges differing from the ones in question, in other plants, under other conditions and according to other specifications, could shed no light upon the question as to how many hours of labor were actually spent upon the work. Appellant is not in a position to complain as to the admission of this class of evidence as on rebuttal it offered evidence of the same character, which was not admitted. Of course if appellee was permitted to introduce its opinion evidence in defense, appellant should have been allowed to introduce the excluded evidence in rebuttal.

DeLancey, on the witness stand, did not claim that the giving of the $4,500 note was a payment in full, but on the contrary expressly stated that it was a payment on account. In its affidavit of merits appellee only specifies 3,000 hours of the 9,790.9 sued for as not representing actual labor performed. Manifestly, the judgment for appellee cannot be sustained by the evidence.

Appellee over appellant's objection was allowed to prove the wage per hour paid by appellee to its workmen. This evidence was incompetent and could not help but be highly prejudicial.

At the request of appellee the court gave the jury the following instruction: "The court instructs the jury that when one holds himself out as specially qualified to perform work or manufacture goods of a particular character, or for a particular purpose, there is an implied warranty that the work which he undertakes to do will be performed in a reasonably skilful manner and within a reasonable time and at a reasonable price, and that the goods which he undertakes to manufacture will be of proper workmanship and reasonably fit for their intended purpose.

"And in this case, if you believe from the evidence that the plaintiff, the Goddard Tool Company, held it-

self out to the Crown Electrical Manufacturing Company as specially qualified to manufacture thread gauges in question, and that the Crown Electrical Manufacturing Company ordered said gauges from plaintiff, and that there was no agreement between the parties specifically fixing the quality of the work or the price to be paid therefor, then you are instructed that under the law the said Goddard Tool Company is required to manufacture said gauges in a reasonably skilful manner and that said gauges shall be reasonably suitable for the purpose intended and that they shall be manufactured for a reasonable price.''

There was no question in the case but what the work was performed in a reasonably skilful manner and there was no question of a reasonable price for the reason that the price per hour was fixed and agreed upon by the parties. The instruction was highly misleading and its giving was error. The cause is reversed and remanded to the circuit court of Kane county.

*Reversed and remanded.*