Elizabeth H. Ballard, Administratrix of the Estate of Thomas L. Ballard, Deceased, Appellee, v. James J. Trainor, Appellant.

Gen. No. 38,190.

510

Opinion filed May 26, 1936.

CHARLES J. TRAINOR, of Chicago, for appellant.

STEVENS, CARRIER & GRIFFITH, of Chicago, for appellee.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this appeal defendant, James J. Trainor, seeks to reverse a judgment for $6,884.16, rendered against him January 10, 1935, in an action of assumpsit

brought by Elizabeth H. Ballard, administratrix of the estate of her husband. The cause was tried by the court without a jury.

The declaration filed February 10, 1932, alleged that on or about August 23, 1929, for value received, defendant executed and delivered to Thomas L. Ballard, plaintiff's intestate, his principal promissory note for $5,000, due six months after date with interest at the rate of seven per cent per annum; and that, although he had been often requested to pay said note since it became due, defendant refused to pay the amount specified therein or any part thereof to Ballard during his lifetime or to plaintiff since his death. A copy of the note was attached to and made part of the declaration, which also included the consolidated common counts.

Defendant filed a plea of the general issue supported by his affidavit of merits wherein he alleged that he executed and delivered the note in question to Ballard to be used by him as collateral security for a loan Ballard proposed to obtain; that such loan was obtained by Ballard and thereafter paid by him; that upon said payment plaintiff's collateral note was surrendered to Ballard to be canceled and returned to defendant; and that there was no other and different consideration for the note.

When this case was reached for trial January 4, 1935, defendant's motion for leave to file additional pleas of payment and accord and satisfaction was denied. The trial court did, however, permit defendant to present evidence as an offer of proof of the allegations of his proffered additional pleas, with the understanding that, if the evidence warranted, leave might later be granted to file such pleas.

January 10, 1935, at the close of all the evidence, defendant renewed his motion supported by his affidavit for leave to file the additional verified pleas of payment and accord and satisfaction.

The plea of accord and satisfaction which defendant sought leave to file averred that only $2,000 was advanced to defendant by Thomas L. Ballard, plaintiff's intestate; that said Ballard, payee of the note in question, was on November 1, 1931, indebted to the Super Cinder Block Company, a corporation, of which he was president; that defendant was a director of and attorney for the same corporation, which was indebted to him in the sum of $15,000 for legal services rendered; that it was agreed between plaintiff's intestate, defendant and officers and directors of said company that the corporation would credit Ballard with $2,000 and interest thereon upon his indebtedness to the corporation and at the same time charge "against defendant's account against said corporation" such $2,000 and interest; that it "was then and there agreed between this defendant and said Ballard that said arrangement would be in full accord and satisfaction of any and all moneys which said Ballard had advanced on the note sued upon in this cause"; that "such credits were accordingly entered by the said corporation in favor of said Ballard and the same were accordingly charged against the account of this defendant by said corporation and thereupon said Ballard agreed with the defendant that he would immediately cancel and return the said note made by the defendant, and frequently thereafter said Ballard agreed to deliver said note to the defendant, but he died before having done so."

The plea of payment, which defendant was refused leave to file, alleged that Ballard had accepted and received from defendant divers sums of money aggregating the total amount advanced by him under the note set forth in plaintiff's declaration in full satisfaction and discharge of everything due thereunder.

In denying defendant's motion at the close of all the evidence for leave to file these additional pleas and in

striking out all the evidence offered in support of same, the trial judge stated that he was "satisfied that it would be an abuse of discretion to allow the amendments on this state of the record."

After offering in evidence without objection a certified copy of the letters of administration issued to plaintiff and defendant's note of August 23, 1929, for $5,000, plaintiff rested. It was stipulated that one General Guy M. Wilson would, if present as a witness, testify in defendant's behalf to the same effect as the witness George A. Kelly as to certain conversations between Wilson, Kelly, Ballard and the defendant.

Kelly testified that at a meeting between himself, Ballard and General Wilson sometime in August, 1929, in Wilson's office in Flint, Michigan, Ballard said, " 'I agree to finance Mr. James Trainor' on an oil deal that he was working on, finance him up to $5,000, and advance the money as is needed by Mr. Trainor. A note was given, was to be given or given for the full amount of the $5,000, although the $5,000 was not paid at that time. It was to be paid, $1,000 was to be paid that week and later on another thousand to be paid, and that constituted the entire amount that was paid on the $5,000 note. . . . In fact the first thousand was paid before we ever got to Flint. . . . I remember General Wilson suggesting that since Mr. Trainor did not know how fast he wanted the money or in what amounts he wanted the money, that he give a note for the whole amount and credit it for payment as it was received; and the note was given for the whole amount so that the note could be used by Mr. Ballard as he wanted to use it. . . . For his credit, if he wanted to use it he could get money on his account."

Kelly testified further that he knew Thomas L. Ballard for several years prior to his death, December 7, 1930; that Ballard was president of the Super Cinder Block Company; that General Wilson was a director

and attorney for that company; that defendant was a director and also performed legal services for the corporation; and that the witness was vice president of the company.

He also testified that the note in question was drawn by General Wilson in Flint, Michigan, and brought by the witness to Chicago where it was signed by defendant and delivered to Ballard; that the oil deal did not go through and no more money was paid defendant by Ballard on the $5,000 note; that "I was not in their oil deal"; that Wilson, Ballard and the defendant met frequently, through the witness, on other matters; and that "in the meantime this office, of course, was opened on this Cinder Block business in New York City."

He then testified that "Ballard had agreed to take $25,000 worth of stock in my company and I owed Mr. Trainor $15,000 on attorney's fees for work previously done. . . . Ballard had subscribed $25,000 of stock in the Cinder Block Company. . . . Mr. Ballard had a note for $5,000 from Mr. Trainor upon which he had paid only two, had not paid the whole five, Mr. Trainor suggested that I get everybody concerned together and settle this unfinished business. I got these men together at the Hamilton Club here in Chicago at a noon-day luncheon . . . not long before Mr. Ballard died, I should say about four to six weeks. . . . Mr. Trainor says, 'Tom, you have my note for $5,000; and the Super Cinder Block Company owes me $15,000 which they are to pay me when they get the funds; and that you have agreed to invest $25,000 in the Super Cinder Block Company. When that investment is made, that or any other investment, when the company gets this money from the sale of stock, you can credit the $2,000 that I owe you on the oil deal against what the company owes me for attorney's fees.' Mr. Ballard says 'That is agreeable, and I will return the $5,000 note to you, Mr. Trainor.'

. . . I was to go with Mr. Ballard and bring that note from Mr. Ballard's office to Mr. Trainor. . . . And that afternoon we never went to his office. And the next day, I went home and did not get the note. Now Mr. Ballard shortly, right after that time, had some work down in St. Louis or Cincinnati or Louisville, Kentucky, where he was, he had work in those parts of the United States, that is in addition to working with municipal engineers here in Chicago, and when I got down he was not here in his office the next week. . . . Mr. Ballard often drove over on . . . Jackson Boulevard, . . . pick me up at the Club and I would ask him about the note until it got— I had asked it so many times it got to be embarrassing. The last time I remember talking to him about it, he says 'Well, George, I got that note from the office, I took that note home to my house last night knowing I have got to come here tomorrow and now this morning that note is at the house.' I remember that conversation definitely. That was just prior, probably the last time that I saw Mr. Ballard before he died.''

Kelly further stated that Ballard died suddenly of some heart ailment and that ''he never did succeed in getting the note back'' from him prior to his death.

George M. Stevens, one of the plaintiff's attorneys, testifying in her behalf, identified copies of three letters, which he stated he had sent to defendant prior to the commencement of this action, demanding payment of the $5,000 note. These letters were not answered, but defendant called on Stevens in his office and said, among other things, that he had not received the entire consideration for the note from Ballard.

Defendant in relating his version of his conversation with Stevens testified, in part, as follows: ''I said to Mr. Stevens, I realized I gave Mr. Ballard the $5,000 note; that the $5,000 note was given for the purpose of defraying certain expenses; Mr. Ballard's share in the

promotion of the sale of the Wagner property in Texas and that I had to go away in the east considerably on negotiations with the Chase National Bank; and that Mr. Ballard at the time had told me that he was short of cash himself and happened to be a director of the Exchange State Bank, that he felt that he himself could not make any advance for himself but he could use my note for that purpose, get the money. And I said, up to that time I got $2,000, $1,000 in New York and $1,000 in Baltimore. When the deal did not seem to be satisfactory in its progress, the Chase Securities Company refused to go any further and I concluded not to go any further, not to use any more money, waste any more money on it."

In addition to his version of his conversation with Stevens defendant also attempted to testify to certain conversations he claimed to have had with deceased, which testimony was properly excluded.

Defendant's contentions, as stated in his brief, are (1) that the evidence contained in his offer of proof "shows conclusively that only $2,000 was advanced by Ballard to defendant, and that said sum was advanced by Ballard as his share of the expenses of promoting the 'oil deal' and for no other purpose and on no other consideration"; (2) "that the note given by defendant to Ballard was to enable Ballard to use it as collateral if he needed to do so"; (3) that, if there was any obligation on defendant's part to repay Ballard the $2,000 which he advanced on the "oil deal," then there was a complete accord and satisfaction and the court erred in refusing to permit defendant to file the additional pleas and "make proof of that fact"; and (4) that the note being still in the hands of the payee's personal representative was evidence only of the actual debt, if any, owing by defendant.

Plaintiff's theory is that under the pleadings the introduction in evidence without objection of the letters of administration issued to her in the estate of

Thomas L. Ballard and the $5,000 note described in the declaration made out a *prima facie* case; that the defense set up in the affidavit of merits could not be shown by defendant under his plea of the general issue and in any event such defense was not sustained by the evidence offered on the trial; that the additional pleas of payment and accord and satisfaction sought to be filed were not proper pleas in view of the evidence offered in their support; that the trial court properly denied defendant's motion for leave to file the additional pleas when first made because no showing was made that defendant could not have filed such pleas before the case was called for trial, assuming that they presented a real defense, and furthermore that they were inconsistent with the affidavit of merits already on file, which was neither withdrawn nor amended; that, when the motion for leave to file the additional pleas was made at the close of all the evidence, it was again properly denied because such pleas were inconsistent with the affidavit of merits theretofore filed and with the evidence offered by defendant himself; and that the affidavit presented January 10, 1935, in support of defendant's motion to file the additional pleas contained no ground upon which the court could have granted the motion.

Defendant's last mentioned affidavit of January 10, 1935, was as follows:

"James J. Trainor, being duly sworn, deposes and states that he is the defendant in the above case.

"He further states that at the time he was served by process in this case, he submitted the same, together with all facts in connection with the transaction, to Mr. James E. McGrath, an attorney of many years standing, and asked Mr. McGrath to prepare the pleadings in the case.

"That his information to Mr. McGrath disclosed the circumstances under which the note was given, the manner of its payment, substantially as testified to in

this case by Mr. George A. Kelly, and this affiant assumed that the pleadings were correctly framed, and did not know to the contrary until the day this case was reached for trial.''

The summons in this cause was served on defendant June 26, 1933. It will be noted that, when he was served with summons, he submitted same with all the facts ''in connection with the transaction'' to one James E. McGrath, ''an attorney of many years standing,'' with instructions to prepare the proper and necessary pleadings in the case, at the same time disclosing to him ''the circumstances under which the note was given, the manner of its payment, substantially as testified in this case by Mr. George A. Kelly.'' It will be further noted that in this same affidavit the defendant states that he assumed that the pleadings were correctly framed, notwithstanding that he, a practicing attorney, personally executed and verified the affidavit of merits filed with his plea of the general issue, July 19, 1933, which set forth as his only defense that the note was without consideration and given to Ballard purely as an accommodation.

It is true that under the statute of Amendments and Jeofails (Illinois State Bar Stats. 1935, ch. 7, sec. 1) trial courts are granted broad power and discretion in allowing amendments to pleadings in pending cases in furtherance of justice at any time before judgment. But are the salutary provisions of this act applicable to the situation presented here? As stated above, the defendant himself signed and swore to the affidavit of merits in July, 1933, and although his affidavit of January 10, 1935, asserts that he apprised attorney McGrath in June, 1933, of all the matters concerning which the witness Kelly testified, Trainor's affidavit of merits is absolutely silent as to both the alleged payment of the note and accord and satisfaction. In addition to alleging that there was no consideration given by Ballard for the note and that it was given to him

by defendant merely as an accommodation note to be used by Ballard as collateral for a loan, the affidavit of merits went further and averred that Ballard used the note as collateral for a loan, which he paid in due course, and that the note was returned to Ballard to be canceled and returned to defendant. There is no evidence in the record that Ballard ever used the note as collateral for a loan.

Defendant relies upon the testimony of Kelly to sustain his right to file the additional pleas of payment and accord and satisfaction. According to Kelly, Ballard said that he "would finance James J. Trainor on an oil deal up to $5,000 and advance the money as needed." Kelly also stated that the defendant, after executing the note, gave it to him to deliver to Ballard and that Ballard advanced $2,000 to Trainor. Trainor insists that the $2,000, which he claims is all that Ballard advanced to him, was advanced as Ballard's share of the expense of financing the "oil deal." If all that Ballard advanced to him was $2,000 and if Ballard was legally obligated to pay Trainor that amount, then why does defendant concede that he owed Ballard anything? Defendant must concede on the record that he was indebted to Ballard because his witness Kelly testified that Trainor said to Ballard, "You can credit the $2,000 that I owe you on the oil deal against what the company owes me for attorney's fees."

Under section 55 of the Practice Act, as amended in 1907 (Cahill's 1931 Ill. Rev. St. ch. 110, ¶ 55), and under sec. 57 of the Civil Practice Act (Ill. State Bar Stats. 1935, ch. 110, ¶ 185), if plaintiff in an action upon a contract for the payment of money files with his declaration an affidavit showing the nature of his demand and the amount due him, he shall be entitled to judgment as in case of default, unless the defendant shall file with his plea an affidavit specifying the nature of the defense which he intends to rely upon. It has repeatedly been held that an affidavit of merits

must make it plain and clear to the plaintiff just what is relied upon by defendant to meet the proof which plaintiff is required to make against him and that defendant is restricted in the presentation of his defense to proof of matters which he has notified plaintiff would constitute his defense. (*Manufacturers State Bank v. American Surety Co.*, 230 Ill. App. 474; *McGovern v. City of Chicago*, 202 Ill. App. 139; *Kadison v. Fortune Bros. Brewing Co.*, 163 Ill. App. 276; *Clinton Co. v. Stiles*, 197 Ill. App. 505; *Reddig v. Looney*, 208 Ill. App. 413; *Goddard Tool Co. v. Crown Electrical Mfg. Co.*, 219 Ill. App. 34.)

In *Manufacturers State Bank v. American Surety Co., supra,* the court said at pp. 481, 483:

"Before the amendment [1907] was adopted the gates were wide open to the defendant to offer any proper proof under any plea filed by him but since the adoption of that amendment the gates are closed against him as to all proofs not tending to support the specific defenses set up in the affidavit of defense. We have held in *Reddig v. Looney, supra,* that matters of defense not set out in the affidavit of merits are waived and that a defendant will not be permitted to give in evidence any matter of defense not stated in his affidavit.

". . .

"It is settled under the authorities in this State that the defenses available under section 55 are limited to those which are set out in the affidavit of defense."

Defendant's affidavit of merits alleged want of consideration and such a defense is not available under the general issue. (*Kent v. Thelin*, 195 Ill. App. 440.) Want of consideration to be made available as a defense must be pleaded specially. (*Wadhams v. Swan*, 109 Ill. 46.) Defendant can prove only such defense as is stated in his affidavit of merits, but he cannot prove that or have a finding upon that unless he has

a pleading appropriate to that defense. The proof and finding must be under proper pleadings but no proof can be admitted or availed of under the pleadings unless it is supported by a proper affidavit of merits. (*Reddig v. Looney, supra.*) Even though there had been an appropriate pleading defendant utterly failed to prove either want of consideration or that the note was an accommodation note. Kelly's testimony, which was not admissible under the only plea on file in the cause and which was inconsistent with the affidavit of merits, did no more than tend to show only partial want of or partial failure of consideration. Kelly testified that at least $2,000 was advanced to Trainor on the note. The defendant did not specially plead either partial want or partial failure of consideration, which he was required to do to avail himself of such defenses and neither did he allege same in his affidavit of merits. Therefore defendant was precluded from relying on either of those defenses.

Did the trial court err in refusing to permit defendant to file the additional pleas of payment and accord and satisfaction? Would such pleas have been of any avail to defendant as the record stood? As heretofore stated defendant is a practicing lawyer and he personally swore to the affidavit of merits in July, 1933. The matters set forth in the special pleas which he proffered in January, 1935, both at the opening and close of the trial, surely were fresher in his mind in 1933 than they were a year and a half later. In fact, he stated in his affidavit of January 10, 1935, that in June, 1933, he informed his attorney, Mr. McGrath, of the matters substantially as testified to by the witness Kelly. Still defendant swore to an affidavit of merits averring only that the note was given without consideration and purely as an accommodation and did not incorporate therein or see that there was incorporated therein either the defense of payment or of accord and

satisfaction. The evidence offered by defendant and the pleas sought to be filed by him placed him in an inconsistent and contradictory position. His affidavit of merits alleged that the note was without any consideration. The evidence offered by him was to the effect that there was a partial want or partial failure of consideration. The proffered pleas averred that the note was paid. Special pleas of payment or accord and satisfaction were unnecessary if the affidavit of merits contained suitable averments, because both of these defenses might be made under the general issue. (*Benes v. Bankers Life Ins. Co.*, 282 Ill. 236; *Hunziker v. Mulcahey*, 215 Ill. App. 508.)

Even though competent under proper pleadings, the evidence offered in support of plaintiff's claim of payment and accord and satisfaction did not establish either of those defenses. There was no evidence offered to show that General Wilson, Kelly, Ballard and defendant, the parties to the purported arrangement, which is claimed to have constituted payment or accord and satisfaction, could bind the corporation known as the Super Cinder Block Company to carry out the agreement testified to by Kelly as having been entered into between Ballard and Trainor, and there is no evidence in the record that the purported arrangement was consummated.

No motion was ever made to either withdraw or amend the original affidavit of merits and with that affidavit on file limiting the defense to want of consideration, it would have been no more than an idle gesture for the court to have granted leave to defendant to file the additional pleas.

Thus we have the defense of want of consideration alleged in the affidavit of merits, and defendant's own evidence discloses that there was at least some consideration for the note. The most that can be gleaned either from the evidence of defendant that was admitted or from his offer of proof is that there was a

partial want or partial failure of consideration for the note. There was neither special plea nor anything in the affidavit of merits upon which either of these defenses could be made available. With appropriate allegations in the affidavit of merits defendant could have availed himself of the defense of payment and accord and satisfaction under the general issue. However, regardless of what pleas were on file, defendant was restricted to the defense of want of consideration, which was the only defense specified in his affidavit of merits, which he neither withdrew nor amended or attempted or offered to withdraw or amend at any stage of the proceedings.

We are of the opinion that the trial court properly refused defendant leave to file the additional special pleas of payment and accord and satisfaction.

For the reasons indicated herein the judgment of the circuit court is affirmed.

*Affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.